NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3254

STEPHANIE JACK,

Petitioner,

v.

DEPARTMENT OF VETERANS AFFAIRS,

Respondent.

Thomas F. Muther, Jr., Minahan and Muther, PC, of Lakewood, Colorado, for petitioner.

Hillary A. Stern, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent.  With her on the brief were Jeanne E. Davidson, Director, and Todd M. Hughes, Deputy Director.

Appealed from:  Arbitrator's Decision

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3254

STEPHANIE JACK,

Petitioner,

v.

DEPARTMENT OF VETERANS AFFAIRS,

Respondent.

Petition for review of an arbitrator's decision in
FMCS No. 070702-57205-3 by Samuel J. Nicholas, Jr.

_____

DECIDED: April 6, 2009

_____

Before NEWMAN, MAYER, and GAJARSA, <u>Circuit Judges</u>.

PER CURIAM.

Stephanie Jack appeals from an arbitration decision, which sustained her demotion by the Department of Veterans Affairs ("VA") based on her "unacceptable" job performance. <u>U.S. Dep't of Veterans Affairs v. Am. Fed'n of Gov't Employees, AFL-CIO Local 1454</u>, FMCS No. 070702-57205-3, slip op. at 5–6 (2008) (Nicholas, Arb.). Because the arbitrator's decision was in accordance with law and supported by substantial evidence, we <u>affirm</u>.

BACKGROUND

Ms. Jack is employed at the VA Regional Office ("RO") in Houston, Texas, as a rating veteran service representative ("RVSR"). As an RVSR, Ms. Jack is primarily responsible for adjudicating veterans' claims, which entails writing a decision that evaluates each claim and the evidence and explains the VA's decision on the claim. Each RVSR is required to meet stated standards on designated "critical elements," which include quality of work, productivity, customer service, and timeliness. If an RVSR receives a rating of "unacceptable" on one of these critical elements, the VA is required to:

> notify the employee of the critical element(s) for which performance is unacceptable and inform the employee of the performance requirement(s) or standard(s) that must be attained in order to demonstrate acceptable performance in his or her position. The agency should also inform the employee that unless his or her performance in the critical element(s) improves to and is sustained at an acceptable level, the employee may be reduced in grade or removed. For each critical element in which the employee's performance is unacceptable, the agency shall afford the employee a reasonable opportunity to demonstrate acceptable performance, commensurate with the duties and responsibilities of the employee's position. As part of the employee's opportunity to demonstrate acceptable performance, the agency shall offer assistance to the employee in improving unacceptable performance.

5 C.F.R. § 432.104.

To achieve an acceptable productivity rating, an RVSR at the GS-12 pay level in the Houston RO is required to process 4.0 weighted cases per day.[1] The productivity rating is calculated using a computer-based self-reporting system called ASPEN.[2] Each RVSR enters information into the system, and the ASPEN computer program uses that

---

[1] Cases are weighted according to how many issues they present. For example, if an RVSR completes a case that requires her to rate 8–15 issues, she will receive credit for two weighted cases.

[2] ASPEN stands for Automated Standardized Performance Elements Nationwide.

information to calculate and track the RVSR's productivity, such as by calculating the average weighted cases per day completed by the RVSR over a specified time period.

Ms. Jack was employed at the GS-12 pay level, but was demoted to the GS-10 pay level on April 29, 2007, because her productivity was rated as "unsuccessful" and did not improve after she was informed of her low rating and placed on two consecutive Performance Improvement Periods ("PIPs"). On July 21, 2006, Ms. Jack was informed by letter of her low productivity and was placed on an initial 90-day PIP. That letter indicated that Ms. Jack completed 3.78 cases per day from October 1, 2005, until the date of the letter, July 21, 2006. The letter also reminded Ms. Jack that it is her responsibility to correctly enter her productivity data into the ASPEN program and informed her that she was required to complete a time management course and to meet with her team leader biweekly to discuss her progress. During the initial PIP, Ms. Jack processed an average of 2.6 weighted cases per day. The PIP was then extended for an additional 90 days, and Ms. Jack processed an average of 2.63 weighted cases per day during the second PIP. Ms. Jack was then demoted to the GS-10 pay level.

Ms. Jack contested her demotion by filing a grievance with the VA, which the VA denied. At some unspecified time after Ms. Jack filed her grievance with the VA, the evidence indicates the Houston RO decided to refrain from placing an employee on a PIP if she completed on average at least 3.5 weighted cases per day. Following arbitration proceedings, Arbitrator Nicholas sustained Ms. Jack's demotion. Ms. Jack timely appealed to this court, asserting that the arbitrator's decision is contrary to law and unsupported by substantial evidence. We have jurisdiction over the arbitrator's decision under 5 U.S.C. §§ 7121(f) and 7703.

## DISCUSSION

As an employee covered by a labor union agreement, Ms. Jack had the option to either appeal her demotion to the Merit Systems Protection Board ("MSPB") or to follow the negotiated grievance procedure described in her labor agreement. 5 U.S.C. § 7121(d). She chose the latter, filing a grievance with the VA and eventually participating in arbitration. In this situation, the arbitrator must apply the same substantive rules as would be applied by the MSPB. Cornelius v. Nutt, 472 U.S. 648, 660–61 (1985). This court has explained how we review the arbitrator's decision:

> We review the arbitrator's decision under the same narrow standard that applies to appeals from the Board. Thus, we affirm the arbitrator's decision unless it is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

Frank v. Dep't of Transp., FAA, 35 F.3d 1554, 1556 (Fed. Cir. 1994) (internal citations and quotation marks omitted).

Ms. Jack first argues that the arbitrator's decision sustaining her demotion was contrary to law because the productivity standard applied to her does not comply with 5 U.S.C. § 4302. Under § 4302, the VA is required to create a performance appraisal system "establishing performance standards which will, to the maximum extent feasible, permit the accurate evaluation of job performance on the basis of objective criteria . . . related to the job in question for each employee or position under the system." 5 U.S.C. § 4302(b). According to Ms. Jack's labor contract, the performance standards "shall be reasonable, realistic, attainable, and sufficient under the circumstances to permit accurate measurement of an employee's performance, and

2008-3254                                    4

adequate to inform the employee of what is necessary to achieve a 'Fully Successful' level of achievement." Petitioner's App. at 15. Ms. Jack argues the productivity standard violates § 4302 because it is not reasonable, realistic, and attainable. Specifically, Ms. Jack argues the requirement is unreasonable because it is more stringent than the requirement applied by other ROs, because it was lowered after she was placed on a PIP, and because other employees in the Houston RO were not held to the same productivity standard. Those arguments are unpersuasive; the evidence indicates the productivity requirement is reasonable.

First, although the Houston RO's productivity requirement is higher than the requirement at other ROs, that disparity alone does not render the requirement invalid. The disparity does not establish that the requirement fails to "permit the accurate evaluation of job performance on the basis of objective criteria," 5 U.S.C. § 4302(b), nor does it establish that the requirement is unreasonable, unrealistic, or unattainable.

Second, although it appears the Houston RO did change its policy to cease placing RVSRs on PIPs so long as they complete at least 3.5 weighted cases per day, Ms. Jack has not demonstrated that the requirement that was applied to her—4.0 weighted cases per day—is unreasonable or unattainable. Performance records for RVSRs in the Houston RO reveal that all 25 RVSRs at Ms. Jack's pay grade with her level of experience—i.e. "journey level" RVSRs—processed at least 4.0 weighted cases per day.[3] Thus, the evidence indicates that the Houston RO's productivity requirement is reasonable.

---

[3] One journey level RVSR processed 3.95 cases per day, but that figure rounds up to 4.0 according to the agency's "standard mathematical rounding procedures."

Finally, we note that Ms. Jack processed approximately 2.6 weighted cases per day during her two PIPs. Therefore, even if the lower standard of 3.5 weighted cases per day applied to Ms. Jack, she failed to meet that standard from July 21, 2006, to February 14, 2007. Because of Ms. Jack's performance during that time, she would have been eligible to be placed on a PIP, rated "unsuccessful" on productivity, and demoted.[4] For these reasons, the performance standard under which Ms. Jack was rated is not invalid under 5 U.S.C. § 4302.

Ms. Jack next argues that the arbitrator's decision is not supported by substantial evidence because she asserts she <u>did</u> process at least 4.0 cases per day for the nine month period preceding her placement on a PIP. That argument lacks merit. The ASPEN program calculates the average weighted cases per day completed by each RVSR based on information entered by the RVSR. On July 21, 2006, Ms. Jack received a letter that stated: "Cumulative Data (*since* October 1, 2005) – You worked 3.78 weighted cases per day." Petitioner's App. at 42. The letter also detailed the average weighted cases Ms. Jack processed per day for each month starting with October 2005 and ending with June 2006. Ms. Jack argues the reported average of 3.78 cases per day must be incorrect. Specifically, she notes that the sum of her nine monthly averages divided by nine equals 4.28 weighted cases per day, which meets the stated productivity requirement.

The primary problem with Ms. Jack's argument is that she cites no evidence to support her method for calculating the average. In fact, the method advocated by Ms.

---

[4] As the VA notes, the collective bargaining agreement covering Ms. Jack requires only that she be given one 90-day PIP. Here, Ms. Jack was not demoted until after she averaged approximately 2.6 cases per day over two 90-day PIPs.

Jack is unlikely to give the correct average. For example, if one is calculating an overall productivity average, it is likely that months containing more working days would be weighted more than months containing fewer working days. Second, the 3.78 cumulative average calculated by ASPEN appears to cover additional days not included in the month-by-month listing, which ends with June 2006. Ms. Jack does not allege a defect in the ASPEN program's method for calculating the average cases processed, nor does she allege that she erroneously entered her information into the program. Thus, the arbitrator reasonably relied on the ASPEN calculation and sustained Ms. Jack's demotion based on substantial evidence.

For the foregoing reasons, we affirm the arbitrator's decision.

No costs.